IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BENJAMIN PATTERSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:16-CV-290-Y |
| | § | (Consolidated with |
| LORIE DAVIS, Director, | § | No. 4:17-CV-598-Y) |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Benjamin Patterson, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. FACTUAL AND PROCEDURAL HISTORY**

On January 16, 2013, in Hood County, Texas, Case No. CR12031, a jury found Petitioner guilty of theft over $20,000 but less than $100,000. It also found the enhancement paragraph and four habitual-offender counts in the indictment true, and assessed his punishment at 99 years' confinement. (Adm. R., Clerk's R. 9-11, 65, doc. 10-12.) His conviction was affirmed on appeal and the Texas Court of

Criminal Appeals refused his petition for discretionary review. (Id., Op. 19, doc. 10-3 & Electronic R., doc.) Petitioner also sought post-conviction habeas-corpus relief in state court to no avail.

The state appellate court set forth the background of the case as follows:

> Color surveillance video from the First National Bank of Granbury shows three masked men use an El Camino to smash through the windows of the bank, steal an ATM machine out of the bank, and place it into the back of the El Camino around two o'clock in the morning on December 2, 2010. A Hood County Sheriff officer, who was driving in the area, heard the alarm call at the bank and observed a dark-colored El Camino exiting the bank parking lot. After a high-speed chase, the ATM machine fell out of the vehicle on James Road, the El Camino crashed into a fence on Royal Lane, and the three suspects fled on foot. Two of the men were captured, and although officers set up a perimeter to search for the third suspect, the third suspect was not located. However, officers discovered a black glove in between two houses. The glove was photographed and collected and put into evidence. After officers watched the bank surveillance video, it was noted that the third suspect was wearing black gloves.
>
> At approximately 8 o'clock in the morning on December 2, 2010, Hood County Sheriff Officer Matthew Bales responded to a report of a stolen GMC on 5410 Frank Lane in Granbury which was near where the El Camino had wrecked. That same day, the stolen GMC was found abandoned in the middle of Lake Como in Fort Worth, Texas. Also in the morning hours of December 2, 2010, Albert Stewart called police to report that his 1979 El Camino had been stolen from his home in Fort Worth.
>
> On December 5, 2010, Hood County Sheriff's Officer Jeremy Roth responded to a report of a burglary of a non-operational pickup on 5412 Frank Lane in Granbury which was near where the El Camino had wrecked and was next door to 5410 Frank Lane, where the GMC was stolen. Officer Roth observed the pickup had been broken into and

2

he noted damage to the steering column and observed a dry, red substance on the steering column. Based on his training and experience, Officer Roth believed the substance was blood. Samples of the substance confirmed to be blood were collected for analysis and booked into evidence. Upon further investigation by police, it was determined that [Petitioner]'s DNA matched the blood samples found on the steering column of the burglarized pickup and [Petitioner]'s DNA could not be excluded as a contributor to the major male DNA mixture profile from the DNA samples retrieved from the black glove found during the search for the third suspect. At trial, the State's theory of the case was that [Petitioner] was the third missing suspect who had dropped his glove during his escape after the El Camino crashed. After [Petitioner] attempted to steal the non-operational vehicle at 5412 Frank Lane and somehow cut himself leaving blood on the steering column, he went next door to 5410 Frank Lane and stole the GMC. [Petitioner] then drove to Fort Worth where he resided, and tried to hide the stolen GMC by dumping it in Lake Como which was in close proximity to his home.

(Id., Op. 1-3, doc. 10-3.)

## II. ISSUES

Petitioner raises four grounds for relief, in which he claims:

(1) that he was denied procedural due process in the state habeas-corpus proceedings;

(2) that the trial court abused its discretion by allowing a key state witness to testify in violation of "the witness rule";

(3) that the evidence was insufficient to support his conviction; and

(4) that the trial court erred by failing to give a limiting instruction concerning the use of extraneous-offense evidence to show identity.

(Pet. 6-7, doc. 1.)

## III. RULE 5 STATEMENT

Respondent does not allege that the petition is barred by successiveness, the statute of limitations, or a failure to exhaust state-court remedies. She does, however, allege that Petitioner's fourth claim is procedurally barred from federal habeas review. (Answer 5, doc. 14.)

**IV. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF**

A § 2254 habeas petition is governed by the heightened standard of review provided for in the AEDPA. *See* 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v.*

*Cockrell,* 274 F.3d 941, 948 n. 11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314, (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n. 3 (5th Cir. 2002).

Finally, when the Texas Court of Criminal Appeals denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Schartzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

## V. DISCUSSION

Under his first ground for relief, Petitioner claims that he was denied procedural due process during the state habeas proceedings because the state did not file a response to his habeas

5

application, the state habeas court did not enter findings of fact and conclusions of law, and the Texas Court of Criminal Appeals denied the application without a written order. (Pet. 6, doc. 1.) It is well established that alleged defects and deficiencies in state habeas-corpus proceedings are not cognizable on federal habeas review. *See Rudd v. Johnson,* 256 F.3d 317, 320 (5th Cir. 2001).

Under his second ground for relief, Petitioner claims that the trial court abused its discretion by allowing a key state witness to testify after invocation of the witness-exclusion rule. (Pet. 6, doc. 1.) Texas Rule of Evidence 614, commonly referred to as "the Rule," provides that "at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." TEX. R. EVID. 614. This is a state rule of evidence. A federal court may grant habeas relief based on an erroneous state-court evidentiary ruling only when the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998).

Relying solely on state case law, the appellate court addressed the issue as follows:

> [Petitioner] contends the trial court abused its discretion when it allowed Cheryl Wright, a witness for the State, to testify after she had heard testimony of two other witnesses in court despite invocation of the witness rule, and that [Petitioner] was harmed as a result of the violation. Texas Rule of Evidence 614 provides for the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony

6

of other witnesses. The purpose of the Rule is to prevent the testimony of one witness from influencing the testimony of another witness. If the Rule is violated by a witness, the witness's testimony may be admitted or excluded at the trial court's discretion.

We review the trial court's decision whether to exclude a witness who has violated the Rule for an abuse of discretion. A violation of the Rule is not in itself reversible error, but only constitutes error when the objected-to testimony is admitted and the complaining party is harmed. Harm to the complaining party is proven by showing that: (1) the witness actually conferred with or heard testimony of other witnesses; and (2) the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated the testimony of a witness he had conferred with or heard.

The record reflects that Wright mistakenly overheard twenty minutes of testimony from other witnesses after the rule was invoked. Outside of the presence of the jury, Wright told the court that she did not remember who was testifying when she was in the courtroom and that she could not say what was talked about. Wright's testimony was admitted over [Petitioner]'s objection that her testimony was tainted as a result of her presence in the courtroom during the officers' testimony.

Although the record clearly reflects Wright violated the rule because she heard the testimony of Officers Hicks and Grizzard, Wright's testimony did not contradict or corroborate the testimony of either officer. The extent of Wright's testimony was that she lived on Frank Lane and owned a 1992 GMC pickup that was stolen on December 2, 2010. According to Wright, there had been no damage to the steering column of her vehicle before it was stolen. The record reflects that the testimony of Officers Hicks and Grizzard had nothing to do with Wright's residence, vehicle, or the damage to the vehicle's steering column. While [Petitioner] seems to argue that Wright overheard a discussion of the State's theory of the case that occurred with the trial court just before the lunch recess, we agree with the State that a careful review of the record shows that any discussion about the State's theory of the case was taken up after the trial court broke for lunch and outside of the presence of Wright. Accordingly, we conclude [Petitioner] was not harmed or prejudiced by Wright

7

> overhearing the testimony of Officers Hicks and Grizzard. The trial court did not abuse its discretion in admitting Wright's testimony.

(Adm. R., Op.17-19, doc. 10-3 (citations omitted).)

Under the circumstances of this case, Petitioner fails to establish that the alleged violation of the Rule rendered his trial fundamentally unfair.

Under his third ground, Petitioner claims that the evidence was insufficient to support his conviction because it rests solely on improperly admitted extraneous-offense evidence of an unrelated offense or offenses. (Pet. 7, doc. 1; Pet'r's Mem. 2, doc. 2.)

Relying solely on state case and evidentiary law, the appellate court addressed this issue as follows:

> [Petitioner] complains the trial court erred by overruling his objections and admitting extraneous offense evidence. He argues that the evidence was inadmissible under Texas Rules of Evidence 403 and 404(b).
>
> *Standard of Review*
>
> We review the admission of extraneous offense evidence for an abuse of discretion. A trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." A trial court's determination on the admissibility of extraneous-offense evidence typically falls within the zone of reasonable disagreement if the evidence shows: (1) that an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. De La Paz, 279 S.W.3d at 344. The trial court's ruling must be upheld if it is reasonably supported by the record and correct under any applicable theory of the law.

8

*Applicable Law*

Relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Under Texas Rules of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove that the accused committed the charged offense in conformity with his bad character. However, it may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. These exceptions are neither mutually exclusive nor collectively exhaustive. For example, "under the reasoning that events do not occur in a vacuum[,]" evidence of extraneous offenses may be admissible "[t]o show the context in which the criminal act occurred[.]" The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. In order for an extraneous offense to be admissible, it must be relevant apart from supporting an inference of character conformity. However, under Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusions of the issues, misleading the jury, or by considerations of undue delay, or needless presentation or cumulative evidence.

*Analysis*

The record establishes [Petitioner] filed a pretrial motion in limine with regard to any extraneous offenses offered by the State. The State explained that it considered three extraneous offenses res gestae to the charged offense and argued that although the extraneous offenses constituted different criminal offenses, they were all part and parcel of the charged offense and the flight therefrom. The three extraneous offenses presented by the State included: (1) the theft of the El Camino; (2) the burglary of the non-operational vehicle in which [Petitioner]'s DNA was discovered; and (3) the theft of the GMC that was abandoned in Lake Como. [Petitioner] raised a Rule 404(b) objection to all three offenses and argued the elements of the extraneous offenses were not consistent with the elements of the charged offense. In response, the State argued the extraneous offenses were part and parcel of the same transaction and that they proved identity, modus operandi, and the preparation and

9

plan for the charged offense and the flight therefrom. The State urged the extraneous offenses proved [Petitioner] broke the steering columns of the vehicles in the same way and that he used the stolen GMC in his flight from the bank theft.

After conducting a balancing test, the Court determined the extraneous offenses concerning the stolen El Camino and the non-operational vehicle in which [Petitioner]'s DNA was discovered were admissible. Specifically, the trial court found those offenses were relevant to a fact of consequence before the jury and were not conduct in conformity with character evidence, and that the probative value outweighed any prejudicial effect under Rule 403. The trial court sustained [Petitioner]'s objection to the extraneous offense concerning the stolen GMC, but reserved its right to revisit the issue during the course of trial.

At trial, the State argued the extraneous offense evidence was res gestae of the charged offense, and should be admitted as a Rule 404(b) exception and as contextual evidence to show how the crime was committed and how [Petitioner] fled from the crime to his home in Fort Worth. [Petitioner] reasserted his objections to the admission of the extraneous offenses. The State further urged that identity was at issue and argued that the only thing [Petitioner] contested was whether he was the third suspect that committed the crime. After considering the totality of the evidence and conducting another balancing test, the trial court found all the extraneous offense evidence to be admissible. [Petitioner]'s subsequent Rule 404(b) and Rule 403 objections to the extraneous offense evidence were overruled by the trial court.

On appeal, [Petitioner] argues the extraneous offense evidence was admitted in error. [Petitioner] maintains the State proved only "that a third guy got away." He further complains that but for the improperly admitted extraneous offense evidence, the case would have been dismissed for insufficient evidence.

In response, the State maintains admission of the extraneous offense evidence was not error "because they were part of the same criminal event and their similarity established the identity of the defendant." The State argues the attempted theft of the non-operational vehicle in which [Petitioner]'s DNA was discovered and that the

actual theft of the GMC found in Lake Como were part of the [Petitioner]'s flight from the bank theft. As such, the State maintains that those two extraneous offenses were admissible to prove guilt and because they were part of the same transaction. As to the theft of the El Camino, which was reported December 2, the morning of the bank theft, the State asserts that the theft of the El Camino was germane to the planning, preparation, and execution of the actual bank theft. The State further points out that the steering columns of all three vehicles were broken in an identical fashion. According to the State, the extraneous offenses "were pieces of the same crime that only have meaning when examined together." The State contends the extraneous offenses "give context to the bank theft and show [[Petitioner]'s] handiwork, or identity." The State also argues the extraneous offense evidence was highly probative because it gave context and helped rebut [Petitioner]'s defense that he was not the perpetrator.

We agree with the State that the extraneous offense evidence was res gestae of the offense or same transaction contextual evidence. The record shows the El Camino was stolen from a residence in Fort Worth close to the homes of [Petitioner] and the other two suspects involved in the bank theft. The owner of the El Camino reported it stolen the morning of the bank theft. The burglary of the non-operational vehicle in which [Petitioner]'s DNA was discovered and the theft of the GMC that was later found in Lake Como occurred in the same area the El Camino crashed and the three suspects fled on December 2, 2010. The report of the burglary of the non-operational pickup, in which [Petitioner]'s DNA was found, was made on December 5, 2010. The GMC was stolen on the same date as the bank theft from a home located next door to the burglarized vehicle which contained [Petitioner]'s DNA. It was also in that same neighborhood that the black glove containing [Petitioner]'s DNA was found. The record establishes that the third suspect who escaped after the El Camino crashed was wearing black gloves. On the same day it was stolen, the GMC was found abandoned in Lake Como which was in close proximity to [Petitioner]'s home and the homes of the other two suspects. All three vehicles involved in the extraneous offenses presented by the State had similar damage of the steering columns. Moreover, officers obtained keys from Anthony Hannon, one of the apprehended suspects, to a vehicle found where the ATM

11

fell out of the El Camino. Inside of that vehicle, officers found Hannon's wallet and cell phone. A search of the cell phone revealed that Hannon and [Petitioner] made calls to one another on December 2, 2010, around the time of the bank theft and had made a number of calls to each other prior to the date of the bank theft. The subpoenaed cell phone records showed that after 1:41 a.m. on December 2, 2010, there were no other calls made between the phone numbers of [Petitioner] and Hannon.

On the record before us, we conclude the trial court could have reasonably concluded the extraneous offense evidence concerning the El Camino, the burglary of the vehicle containing [Petitioner]'s DNA, and the stolen GMC abandoned in Lake Como was res gestae of the offense or same transaction contextual evidence. At a minimum, the trial court's admission of the extraneous offense evidence is within the zone of reasonable disagreement as to whether the evidence was needed to prove identity or understand the res gestae of the charged offense. Accordingly, we conclude the trial court did not abuse its discretion in admitting the complained-of extraneous offense evidence.

The extraneous offense evidence was also admissible to rebut [Petitioner]'s defensive theory that he was not the third suspect who escaped after the El Camino crashed. At trial, during [Petitioner]'s opening statement, [Petitioner] advanced a theory that [Petitioner] was not the third suspect who escaped after the bank robbery:

> Defense counsel: Folks, what you just heard was a giant fishing expedition. There's nothing specific about it, and we anticipate in this case there's not going to be anything specific about what they can prove. All right. Fishing for the next two days, fishing in troubled waters. The realty [sic] of it is that they got the wrong guy.
>
> . . .
>
> You're going to hear a lot of talk about DNA, a lot of talk about cuts and bruises, a lot of talk about what could have happened, okay? But none of those things speak directly to the elements of what happened over at First

12

> National Bank. And you won't hear any evidence
> that places [[Petitioner]] at the scene of that
> crime on the night that it happened. It's a
> theory. That's what the evidence is going to
> show.
>
> . . .
>
> What we expect to see is that you will hear
> testimony of some very smart people, some very
> honest, hard-working people who live and work
> right here in Hood County, okay? They don't
> know a whole lot about the third guy in this
> offense. They won't be able to specifically put
> their finger on [Petitioner]. Not saying that
> they're bad people, but we want you to examine
> their testimony very closely.
>
> At the end of this testimony, we're going
> to return to you, we're going to ask you to
> find [Petitioner] not guilty.

Similarly, during closing argument, [Petitioner]'s counsel summed up the State's evidence as showing that "[t]he third guy got away." The jury was told that [Petitioner] was not the third guy and that nothing was presented to prove that he was the third guy. [Petitioner]'s counsel stated that "what the State has attempted to do [was] show [the jury] in general terms that [Petitioner is] a bad person, because they cannot specifically prove that the third guy was him."

[Petitioner] also complains the trial court erred in admitting State's Exhibit 208, a copy of the subpoenaed cell phone records showing that phone calls were exchanged between [Petitioner] and Hannon. The State maintains the cell phone records were relevant and admissible because they "demonstrated a connection between one of the captured suspects and [Petitioner]; the record was material to proving he was the third suspect, a fact of consequence in the case." We agree with the State. Here, Hannon's cell phone was found in a vehicle were the ATM fell out of the El Camino as it fled the bank. The subpoenaed phone records showed a number of calls between Hannon's cell phone number and [Petitioner]'s cell phone number on December 2, 2010, including one during the time frame of the bank theft, as well as calls before the date of the bank theft. However,

>     after the theft and Hannon's capture, there were no more
>     calls made between the two cell phone numbers. In this
>     case, where identity was at issue and [Petitioner]'s
>     defensive theory was that he was not the third suspect
>     who escaped from police, the evidence was relevant and
>     highly probative because it made facts of consequence
>     more likely. The trial court did not err by admitting
>     this evidence.
>
>     We conclude the trial court did not abuse its
>     discretion in determining that the probative value of the
>     extraneous offense evidence was not substantially
>     outweighed by the danger of unfair prejudice. Because the
>     trial court's ruling was "within the zone of reasonable
>     disagreement," we conclude the trial court did not abuse
>     its discretion by admitting the complained-of extraneous
>     offense evidence.

(Adm. R., Op. 3-13, doc. 10-3 (citations omitted).)

Petitioner fails to establish that admission of the extraneous-offense evidence rendered his trial fundamentally unfair. The admission of an extraneous offense does not violate constitutional due process "if the extraneous offense is rationally connected with the offense charged." See Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007). The extraneous-offense evidence here was properly admitted because it bears a rational relationship to the charged offense.

Finally, under his fourth ground for relief, Petitioner claims that the trial court erred by failing to give a limiting instruction to the jury regarding the use of extraneous-offense evidence. (Pet. 7, doc. 1.) Specifically, he claims the trial court erred by failing to give a limiting instruction as to identity, as requested by the state, and, instead, giving a limiting instruction "to show

knowledge and intent." (Id.; Adm. R., Clerk's R. 42, doc. 10-12.) Respondent asserts that the claim is procedurally barred from the Court's review because the claim, although raised on appeal, was overruled by the appellate court because it was not preserved for appellate review by lack of a contemporaneous objection. (Resp't's Answer 16-18, doc. 14.)

Under the procedural-default doctrine, federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Rule 105 of the Texas Rules of Evidence provides in pertinent part:

> (a) Limiting Instruction. If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, *on request,* must restrict the evidence to its proper scope and instruct the jury accordingly.

Tex. R. Evid. 105(a) (emphasis added). *See also Garcia v. State,* 887 S.W.2d 862, 878 (Tex. Crim. App. 1994) (providing party opposing evidence has burden to object and request limiting instruction at introduction of evidence). The state appellate court held in its opinion that any error was forfeited by Petitioner's failure to object and request a limiting instruction at the introduction of the evidence. (Adm. R., Op. 13-15, doc. 10-3.) Texas's contemporaneous-objection rule is an independent and adequate state procedural bar to federal habeas review. *See Amos v. Scott,* 61 F.3d 333, 341 (5th

Cir. 1995). Thus, the procedural default in state court precludes federal habeas review of the claim absent a showing of cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002).

Toward that end, Petitioner claims that his trial counsel was ineffective by failing to request a limiting instruction regarding identity. However, Petitioner's conclusory assertion, without more, is insufficient to demonstrate cause and prejudice. *United States v. Holmes,* 406 F.3d 337, 361 (5th Cir. 2005). *See also Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (stating that mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue).

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484

(2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack*, 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of Petitioner's constitutional claims or procedural rulings. Therefore, a certificate of appealability should not issue.

    SIGNED December 14, 2017.

                                                                    */s/ Terry R. Means*
                                                                   TERRY R. MEANS
                                                                   UNITED STATES DISTRICT JUDGE